**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

Lydia Cook, Respondent,

v.

Regions Bank and Robyn Clevinger, Appellants.

Appellate Case No. 2014-001196

---

Appeal From Hampton County
Brooks P. Goldsmith, Circuit Court Judge

---

Unpublished Opinion No. 2016-UP-387
Submitted June 1, 2016 – Filed July 27, 2016

---

**AFFIRMED IN PART AND REVERSED IN PART**

---

John H. Tiller and Amy F. Bower, both of Haynsworth Sinkler Boyd, PA, of Charleston; and C. Mitchell Brown, Brian P. Crotty, and Michael J. Anzelmo, all of Nelson Mullins Riley & Scarborough, LLP, of Columbia, for Appellant Regions Bank.

Ernest Mitchell Griffith, of Griffith, Sharp & Liipfert, LLC, of Beaufort, for Appellant Robyn Clevinger.

John E. Parker and William F. Barnes, III, both of Peters Murdaugh Parker Eltzroth & Detrick, P.A., of Hampton, for Respondent.

————————

**PER CURIAM:**  Regions Bank and Robyn Clevinger (Appellants) appeal the trial court's denial of their motions for directed verdict and judgment notwithstanding the verdict (JNOV).  Appellants claim the trial court erred by denying the motions because (1) the alleged defamatory statement was true or, at a minimum, substantially true; (2) Respondent Lydia Cook failed to present evidence showing the statement was published to a third party; and (3) Appellants were entitled to a qualified privilege and did not abuse the privilege.  Appellants also assert the trial court erred by submitting the issue of punitive damages to the jury because Cook failed to present any clear and convincing evidence of actual malice.  We affirm in part and reverse in part.

Initially, relying on *Stephens*,[1] Cook argues Appellants failed to preserve their arguments because they failed to move for a directed verdict at the close of all evidence.  We find Appellants were not required to renew their motions for directed verdict after Cook published the stipulation.  In contrast to *Stephens*, Appellants in this case did not introduce any additional evidence following their last directed verdict motions.  Also, the stipulation related to Regions Bank's net worth, which could not have impacted the trial court's analysis of Appellant's directed verdict arguments.  Further, Cook introduced the stipulation immediately after the trial court ruled on the directed verdict motions.  Thus, any renewal of Appellants' motions for directed verdict would have been futile when the evidence within the stipulation did not relate to Appellants' arguments and there was no passage of time during which the trial court could have reevaluated its earlier ruling.  *See Fettler v. Gentner*, 396 S.C. 461, 469, 722 S.E.2d 26, 31 (Ct. App. 2012) ("This court does not require parties to engage in futile actions in order to preserve issues for appellate review."); *id.* at 470, 722 S.E.2d at 31 (finding a jury charge argument preserved even though no objection was made because the objection would have been futile when the trial court had already ruled there was evidence to go to the jury on the issue in its ruling on the appellant's directed verdict motion).  Thus, Appellants properly preserved their arguments.

————————

[1] *Stephens v. CSX Transp., Inc.*, 415 S.C. 182, 781 S.E.2d 534 (2015).

With regard to Appellants' argument the trial court erred by denying their motions for directed verdict and JNOV because Clevinger's statement was true or, at a minimum, substantially true, we affirm because there is some evidence in the record to support the trial court's ruling. *See RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 332, 732 S.E.2d 166, 171 (2012) ("An appellate court will reverse the trial court's ruling [on a motion for JNOV] only if no evidence supports that ruling below."). Cook testified she merely hugged Clevinger and kissed her on the cheek. Cook asserted her actions were not aggressive and it was impossible for her to have injured Clevinger. Also, Dr. Glenn Welcker's letter supported Cook's assertion that she could not have aggressively hugged and injured Clevinger. Although Cook's and Dr. Welcker's assertions were contradicted by Clevinger and Freeman, a reasonable jury could have believed Cook's version of events, and neither the trial court nor this Court has the authority to resolve conflicting testimony when deciding a motion for directed verdict or JNOV. *See id.* ("[A] motion for JNOV may be granted only if no reasonable jury could have reached the challenged verdict."); *id.* ("In deciding such motions, neither the trial court nor the appellate court has the authority to decide credibility issues or to resolve conflicts in the testimony or the evidence.").

Furthermore, we disagree with Appellants' argument they needed to show only that Clevinger perceived Cook's actions as violent, aggressive, and intimidating. Clevinger's perceptions were irrelevant when analyzing Appellants' truth defense. The statement itself must have been true or substantially true for Appellants to prevail as a matter of law on their truth defense. *See Fountain v. First Reliance Bank*, 398 S.C. 434, 442, 730 S.E.2d 305, 309 (2012) (concluding a defendant has "a complete defense to defamation based on the statement's literal meaning"). Accordingly, we affirm on this issue.

With regard to Appellants' argument the trial court erred by denying their motions for directed verdict and JNOV because Cook failed to present evidence Clevinger published her statement to a third party, we affirm. Appellants admit Clevinger made the statement to multiple of her coworkers and supervisors. We reject Appellants' argument that communications between employees do not qualify as publications for defamation purposes. *See McBride v. Sch. Dist. of Greenville Cty.*, 389 S.C. 546, 562, 698 S.E.2d 845, 853 (Ct. App. 2010) ("[I]n South Carolina, an employee's statement to another employee is a 'publication' when the privilege of the employees' common interest is abused."). We find communications between employees are publications for defamation purposes, but they may be entitled to a qualified privilege as discussed below.

This rule is consistent with other jurisdictions. *See Popko v. Cont'l Cas. Co.*, 823 N.E.2d 184, 188 (Ill. App. Ct. 2005) ("The communication of interoffice reports within a corporation has previously been determined to constitute a publication for defamation purposes."); *Luttrell v. United Tel. Sys., Inc.*, 683 P.2d 1292, 1294 (Kan. Ct. App. 1984) ("We conclude that remarks communicated by one corporate employee to another concerning the job performance of a third employee are publication for the purposes of a defamation action against the employer."); *Wallulis v. Dymowski*, 918 P.2d 755, 760 (Or. 1996) (en banc) ("[W]e hold that a defamatory communication from one corporate employee to another corporate employee concerning the job performance of a third employee is 'published' for the purpose of a defamation claim.").[2] Accordingly, we affirm the trial court's denial of Appellants' motions for directed verdict and JNOV based on whether Clevinger published the statement to a third party because communications between employees of a corporation qualify as publications for defamation purposes.

With regard to Appellants' argument the trial court erred by denying their motions for directed verdict and JNOV because they were entitled to a qualified privilege and there was no evidence tending to show they abused the privilege, we affirm. We find a qualified privilege existed in this case, but there was some evidence tending to show Clevinger abused the privilege such that we affirm the trial court's denial of Appellants' motions. *See RFT Mgmt.*, 399 S.C. at 332, 732 S.E.2d at 171 ("An appellate court will reverse the trial court's ruling only if no evidence supports that ruling below."); *Fountain*, 398 S.C. at 444, 730 S.E.2d at 310 ("The essential elements of a conditionally privileged communication may be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only."); *id.* ("An abuse of the privilege occurs in one of two situations: (1) a statement made in good faith that goes beyond the scope of what is reasonable

---

[2] We acknowledge some jurisdictions have reached the opposite conclusion. *See Lovelace v. Long John Silver's, Inc.*, 841 S.W.2d 682, 684 (Mo. Ct. App. 1992) (recognizing the "intra-corporate immunity rule" and explaining "communications between officers of the same corporation in the due and regular course of the corporate business, or between different offices of the same corporation, are not publications to third persons"). However, we follow this Court's ruling in *McBride*.

under the duties and interests involved or (2) a statement made in reckless disregard of the victim's rights.").

Under our deferential standard of review, we find there was some evidence tending to show Clevinger abused the privilege by making the statement in bad faith with an improper motive. When arguing the directed verdict motions, Regions Bank admitted, "in fairness to the court, . . . there [was] some evidence" of Clevinger having a motive to falsely issue the statement. There was at least some evidence that Clevinger had an improper motive to make the statement, which if true could have been an abuse of the privilege. In April 2011, Cook filed a complaint about Clevinger with human resources, and according to Cook, the following day Clevinger asked her "who [she] had been talking to" and began treating Cook negatively. Also, approximately eighteen days after the incident at issue in this case, Clevinger told Holly Johnson she could no longer work with Cook. We find this evidence amounts to some evidence supporting the trial court's ruling, and thus, we affirm.

With regard to Appellants' argument the trial court erred by submitting the issue of punitive damages to the jury because Cook failed to present any clear and convincing evidence that Clevinger published the statement with actual malice, we agree and reverse.[3] *See* S.C. Code Ann. § 15-33-135 (2005) ("In any civil action where punitive damages are claimed, the plaintiff has the burden of proving such damages by clear and convincing evidence."); *Erickson v. Jones St. Publishers, L.L.C.*, 368 S.C. 444, 466-67, 629 S.E.2d 653, 665 (2006) (explaining that to recover punitive damages on a defamation cause of action, the plaintiff "must prove by clear and convincing evidence that the defendant acted with constitutional actual malice, *i.e.*, the defendant published the statement with knowledge it was false or with reckless disregard of whether it was false or not").

Additionally, our supreme court has delineated a less deferential standard of review for punitive damages in defamation cases.

> Whether evidence is sufficient to support a jury's finding of constitutional actual malice in a defamation action is a question of law. The trial court must make such a

---

[3] The jury awarded Cook $375,000 in actual damages and $125,000 in punitive damages.

determination before submitting the issue to the jury. When the jury makes such a finding, the appellate court must independently examine the record to determine whether the evidence sufficiently supports a finding of actual malice. This review is necessary due to the unique character of the interest protected by the actual malice standard.

*Id.* at 477, 629 S.E.2d at 670-71 (citations and internal quotation marks omitted).

After examining the record, we find Cook failed to carry her burden of showing by clear and convincing evidence that Clevinger published the statement with knowledge of its falsity or with reckless disregard of whether it was false or not. When arguing she carried her burden of proof, Cook asserts the evidence showed Clevinger stated on May 27, 2011, approximately eighteen days after the incident, she could "not continue to work with [Cook] at this point, this pace." We believe this isolated assertion was not probative of Clevinger's intentions and knowledge at the time she made the allegedly defamatory statement because it was vague, occurred eighteen days after the incident, and was pulled from Holly Johnson's handwritten notes. This note does not amount to clear and convincing evidence that Clevinger made the allegedly defamatory statement with knowledge of its falsity or reckless disregard for whether it was false or not.

Next, Cook points to her own assertion during trial "that she felt Clevinger was retaliating against her for filing the complaint" to human resources in April 2011. We believe this assertion amounts to nothing more than speculation. There is no clear and convincing evidence in the record to show Clevinger was even aware of Cook's complaint to human resources. Cook claimed Clevinger approached her and asked who Cook "had been talking to." This simple question by Clevinger does not show Clevinger was aware of Cook's complaint or that Clevinger was referring to the complaint even if she was aware of it. We do not believe Cook produced clear and convincing evidence showing Clevinger was retaliating against Cook by publishing her allegedly defamatory statement with knowledge of its falsity or reckless disregard for whether it was false or not.

Cook also points to Andree Lloyd's testimony that she did not believe Clevinger was telling the truth. However, Lloyd merely stated she did not believe Clevinger. Lloyd did not have any actual evidence tending to show Clevinger made the allegedly defamatory statement with knowledge of its falsity. Lloyd did describe other incidents in which she believed Clevinger had been untruthful, but those

events were completely unrelated to the statement in this case. Thus, we do not believe Lloyd's speculative opinion about Clevinger's veracity in this instance amounts to clear and convincing evidence that she published the statement with knowledge of its falsity.

Additionally, Cook points to Regions Bank's conduct of terminating Clevinger and Dr. Welcker's letter regarding Cook's physical limitations as evidence supporting punitive damages. We find this evidence had very little, if any, probative value regarding whether Clevinger published her statement with knowledge of its falsity and, thus, did not provide the requisite clear and convincing evidence. Regions Bank's actions following the statement do not provide any evidence concerning whether Clevinger published the statement with constitutional actual malice. Accordingly, under our standard of review for punitive damages in defamation cases, we find Cook failed to carry her burden of showing by clear and convincing evidence that Clevinger published the statement with knowledge of its falsity or with reckless disregard of whether it was false or not. The trial court erred by failing to grant Appellants' motions for directed verdict and JNOV, and we reverse the jury's award of punitive damages.

Based on the foregoing, we affirm the trial court's denial of Appellants' motions for directed verdict and JNOV with regard to their arguments on the truth defense, publication, and abuse of the qualified privilege. However, we reverse the trial court's decision on punitive damages as discussed above.

**AFFIRMED IN PART AND REVERSED IN PART.**[4]

**SHORT, WILLIAMS, and THOMAS, JJ., concur.**

---

[4] We decide this case without oral argument pursuant to Rule 215, SCACR.